ARBET and husband, Plaintiffs and Appellants, v. GUS-
SARSON and another, Defendants: AMERICAN MOTORS
CORPORATION, Defendant and Respondent.

*No. 462. Argued January 7, 1975.—Decided February 4, 1975.*
(Also reported in 225 N. W. 2d 431.)

For the appellants there were briefs by *Habush, Gillick, Habush, Davis & Murphy,* attorneys, and *Howard A. Davis* and *Jean Seaburg* of counsel, all of Milwaukee, and oral argument by *James T. Murphy.*

For the respondent there was a brief by *Schoone, McManus, Hanson & Grady, S. C.,* of Racine, attorneys, and *Kevin M. O'Donnell* and *Leah M. Lampone,* both of

Milwaukee, of counsel, and oral argument by *Adrian P. Schoone.*

WILKIE, C. J.   This is a "crashworthiness" products liability case arising from an automobile accident in which plaintiffs-appellants, Jane and Raymond Arbet were burned following the rupture of their vehicle's gasoline tank and ignition of the fuel. The Arbets sued defendant Mark Gussarson, the driver of the car that rear-ended their car, and defendant-respondent American Motors Corporation, the manufacturer of the Arbets' car. Gussarson is not a party to this appeal. The Arbets allege American Motors negligently designed and manufactured their car and that such negligence, while not causing the collision itself, did proximately cause the burn injuries. The trial court sustained American Motors' demurrer to plaintiffs' second amended complaint and judgment was entered accordingly. Plaintiffs appeal and we reverse.

The sole issue raised by this appeal is whether an automobile manufacturer may incur liability for injuries to occupants of a car arising from the manufacturer's negligence in designing the car such that it is unreasonably unsafe in an accident.

We conclude that the automobile manufacturer may, and we therefore uphold the complaint as against the demurrer of American Motors Corporation.

The second amended complaint alleges the following facts: On February 15, 1972, in Kenosha county, Raymond Arbet was driving and his wife Jane was a passenger in a 1967 Rambler Station Wagon that the couple had purchased new directly from American Motors. Raymond was waiting to make a left turn when the allegedly intoxicated defendant Gussarson allegedly negligently rammed his car into the rear of the Arbets' car. The sequence of events following the collision was as follows: The front seat failed, causing Jane Arbet to be propelled

into the rearmost portion of the station wagon; all four doors jammed "blocking all possibility of normal exit," and preventing Raymond, who apparently escaped through a window, from quickly freeing his wife. The gas tank ruptured, spreading gasoline on the highway that was ignited by an unknown source; the heat from the fire melted a gas line "plastic vent container in the passenger compartment" causing fire inside the car, severely burning Jane Arbet and also burning Raymond as he tried to free his wife. The complaint then alleges that "neither plaintiff would have been injured by the fire if the station wagon had not been negligently designed."

The second amended complaint attempts to state causes of action against American Motors based upon ordinary negligence and upon strict liability.[1] The complaint contains substantially similar allegations of negligent conduct to support both theories: (1) Design of the gas tank so that it would completely rupture following impact, despite feasible means within the then-existing state of the art to build a gas tank that would retard leakage upon impact; (2) design of body and frame resulting in buckling and jamming of doors upon impact; (3) use of plastic breather mechanism retaining gasoline in passenger compartment where plastic could melt from heat from fire below vehicle, thus spreading gasoline inside car. The plastic mechanism was allegedly only used on 1967 Rambler three-seater station wagons and was subsequently replaced with a breather that would not retain gasoline in the passenger compartment; (4) failure to properly manufacture and inspect to insure that cars

[1] The second amended complaint actually alleges six causes of action. The first three are based upon the negligence theory: The first in Jane Arbet's behalf for personal injuries, the second on Raymond Arbet's behalf for personal injuries, and the third also on Raymond's behalf for medical expenses arising from Jane's injuries and for loss of society and companionship. The latter three causes of action are based upon strict liability and are divided in a manner similar to the first three causes of action.

sold were not unreasonably dangerous; (5) failure to test and to establish quality controls to insure that the plastic breather mechanism would operate properly; (6) failure to warn potential users of the car of the above hidden dangers in the event of a collision. In addition, to support the strict liability theory the complaint alleges the car was defective and unreasonably dangerous, that American Motors was in the business of selling automobiles, and that the car was expected to and did reach the Arbets in substantially the same condition as when it was sold. The complaint seeks total damages of $2,550,000.

This complaint states a cause of action for strict liability under Wisconsin products liability law.

The doctrine of strict products liability under sec. 402A of the Restatement of *Torts* 2d [2] was first adopted by this court in *Dippel v. Sciano* [3] and was most recently restated in *Powers v. Hunt-Wesson Foods, Inc.* [4] Under this doctrine, where plaintiff shows that a manufacturer markets a product in a "defective condition" which is

[2] This section provides:

"Special Liability of Seller of Product for Physical Harm to User or Consumer

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." Restatement, 2 *Torts* 2d, pp. 347, 348, sec. 402A.

[3] (1967), 37 Wis. 2d 443, 155 N. W. 2d 55.

[4] (1974), 64 Wis. 2d 532, 219 N. W. 2d 393.

"unreasonably dangerous to the user," the manufacturer then has the burden to prove lack of negligence.

In the instant case, plaintiffs primarily allege that the car was defectively designed so that it was unreasonably dangerous in an accident. Plaintiffs do not ask that cars be built like Sherman tanks; rather, merely that they not contain design features rendering them unreasonably unsafe in an accident.

There is no question that the complaint alleges facts showing the car to be "unreasonably dangerous" in an accident—particularly the allegations concerning the plastic apparatus retaining gasoline in the passenger compartment indicate unreasonable danger.

The fact that the defect relates to *design* rather than *negligent manufacture* makes no difference. In *Schuh v. Fox River Tractor Co.*[5] this court held that a manufacturer could be liable under a strict products liability theory where it had designed a machine such that it was unreasonably dangerous. The plaintiff had tried the case under the theory that the defendant manufacturer had located the clutch lever on a crop blower machine in a place where the machine operator might be misled as to the lever's function. This court held that plaintiff had sustained his burden of proof that this design was unreasonably dangerous within the meaning of sec. 402A of the Restatement:

"We are of the opinion that there is credible evidence upon which the jury could find that the positioning of the lever was unusual and misleading. There is credible evidence that the location of the clutch lever contradicted the custom and practice of other manufacturers, who designed their machines in accordance with the accepted functional design engineering rule explained by Dr. Wardle. The jury could well have concluded that the placement of this lever could lead a potential user of the machine to believe he was stopping both the auger and the fan when he pulled the lever. In the absence of a warning to the contrary, the jury could well conclude

[5] (1974), 63 Wis. 2d 728, 218 N. W. 2d 279.

that the machine was unreasonably dangerous and defective in its design by locating the control lever in such a misleading position without an appropriate warning." [6]

It must be noted also that the design characteristics complained of in the instant case were hidden dangers, not apparent to the buyer of the car, and not the subject of a manufacturer's warning. This is a different case, therefore, than a case where a plaintiff sues the manufacturer of a Volkswagen and complains that the car was designed too small to be safe. Such a defect could hardly be said to be hidden. To be an "unreasonably dangerous" defect for strict products liability purposes, comment $i$ to sec. 402A, Restatement, 2 *Torts* 2d, says in part:

". . . The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

Thus, under this definition, since the ordinary consumer would expect a Volkswagen to be less safe in an accident than, say, a Cadillac, the smallness of the car with the attendant danger would not per se render it inherently dangerous. Rather it must contain a dangerous defect whose presence an ordinary consumer would not reasonably expect.

Additionally it is not important that the defect did not actually cause the initial accident, as long as it was a substantial factor in causing injury as alleged in plaintiffs' complaint. As this court held in *Schnabl v. Ford Motor Co.:* [7]

". . . Appellant is not suing for total injuries, but for the death alleged to have been caused by the incremental injury which occurred because of the faulty seat belt.
"This court has held that 'The test of cause in Wisconsin is whether the defendant's negligence was a sub-

[6] *Id.* at page 737.
[7] (1972), 54 Wis. 2d 345, 353, 354, 195 N. W. 2d 602, 198 N. W. 2d 161.

stantial factor in contributing to the result.' It need not be the sole factor, the primary factor, only 'a substantial factor.' Whether the delivery in Wisconsin of a faulty seat belt could have been a substantial factor in causing the death of deceased, even if it played no part in the accident, is a question of fact to be determined by the trier of fact."

Defendant argues that there can be no liability here because plaintiffs *misused* the car, *i.e.*, cars were not intended to be "used" to have an accident. Defendant argues that even though accidents are foreseeable, that does not establish a duty on the part of the manufacturer to design a reasonably safe car.

For two reasons, however, defendant is wrong. First, plaintiffs did not misuse the car. They did not intentionally have an accident or use the car to knock down trees in a forest. The accident occurred while plaintiffs were using the car for the purpose for which it was intended, normal driving on the highway. Second, even if the plaintiffs did misuse the car, that would not ipso facto defeat their claim if the misuse, or risk of an accident, was reasonably foreseeable. Clearly the risk that a car may be in a rear-end accident is reasonably foreseeable by defendant. Therefore, defendant has a duty to anticipate that risk. As the court said in *Schuh*: [8]

" '. . . "Intended use" is but a convenient adaptation of the basic test of "reasonable foreseeability" framed to more specifically fit the factual situations out of which arise questions of a manufacturer's liability for negligence. "Intended use" is not an inflexible formula to be apodictically applied to every case. Normally a seller or manufacturer is entitled to anticipate that the product he deals in will be used only for the purposes for which it is manufactured and sold; thus he is expected to reasonably foresee only injuries arising in the course of such use.

" 'However, he must also be expected to anticipate the environment which is normal for the use of his product

---

[8] 63 Wis. 2d at 741.

and where, as here, that environment is the home, *he must anticipate the reasonably foreseeable risks of the use of his product in such an environment. These are risks which are inherent in the proper use for which his product is manufactured. . . .'* " (Emphasis supplied.)

However, as the court also noted in *Schuh*, misuse of a product may be considered contributory negligence:

". . . Every maufacturer intends his machinery to be used *safely*. But it is not necessarily a complete defense to liability to show that the machine was being used otherwise. Under certain circumstances, misuse may constitute contributory negligence and thus be a factor in the comparison of negligence." [9]

Thus it is clear that plaintiffs' complaint states a cause of action for strict products liability under Wisconsin law. In view of our conclusion, it is unnecessary to extensively examine the numerous cases cited by the parties from other jurisdictions.[10] The leading case in this area is *Larsen v. General Motors Corp.,*[11] a decision of the Eighth Federal Circuit Court of Appeals applying Michigan law.

In *Larsen*, plaintiff sued General Motors for injuries caused by the allegedly negligent design of a Corvair's steering column which, in a head-on collision, allegedly acted as a spear propelled with great force directly at the driver's head. The court reversed the trial court's grant of summary judgment, and allowed plaintiff to proceed to trial. Concerning the problem of misuse the court said:

---

[9] *Id.*

[10] For a good review of recent cases on this subject, *see Volkswagen of America, Inc. v. Young* (1974), 272 Md. 201, 321 Atl. 2d 737.

[11] (8th Cir. 1968), 391 Fed. 2d 495. *Contra, Evans v. General Motors Corp.* (7th Cir. 1966), 359 Fed. 2d 822, certiorari denied, 385 U. S. 836, 87 Sup. Ct. 83, 17 L. Ed. 2d 70; *but see Nanda v. Ford Motor Co.* (7th Cir. 1974), 509 Fed. 2d 213.

"Accepting, therefore, the principle that a manufacturer's duty of design and construction extends to producing a product that is reasonably fit for its intended use and free of hidden defects that could render it unsafe for such use, the issue narrows on the proper interpretation of 'intended use.' Automobiles are made for use on the roads and highways in transporting persons and cargo to and from various points. This intended use cannot be carried out without encountering in varying degrees the statistically proved hazard of injury-producing impacts of various types. The manufacturer should not be heard to say that it does not intend its product to be involved in any accident when it can easily foresee and when it knows that the probability over the life of its product is high, that it will be involved in some type of injury-producing accident. O'Connell in his article 'Taming the Automobile,' 58 Nw. U. L. Rev. 299, 348 (1963) cites that between one-fourth to two-thirds of all automobiles during their use at some time are involved in an accident producing injury or death. . . . It should be recognized that the environment in which a product is used must be taken into consideration by the manufacturer." [12]

Concerning the problem of imposing liability based upon design as opposed to construction defects, the court said:

". . . We perceive of no sound reason, either in logic or experience, nor any command in precedent, why the manufacturer should not be held to a reasonable duty of care in the design of its vehicle consonant with the state of the art to minimize the effect of accidents. The manufacturers are not insurers but should be held to a standard of reasonable care in design to provide a reasonably safe vehicle in which to travel. . . .

". . . The duty of reasonable care in design should be viewed in light of the risk. While all risks cannot be eliminated nor can a crash-proof vehicle be designed under the present state of the art, there are many commonsense factors in design, which are or should be well known to the manufacturer that will minimize or lessen the injurious effects of a collision. The standard of reasonable care is applied in many other negligence situations and should be applied here.

---

[12] 391 Fed. 2d 501, 502.

"The courts since MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F., 696 (1916) have held that a manufacturer of automobiles is under a duty to construct a vehicle that is free of latent and hidden defects. We can perceive of no significant difference in imposing a common law duty of a reasonable standard of care in design the same as in construction. A defect in either can cause severe injury or death and a negligent design defect should be actionable. Any design defect not causing the accident would not subject the manufacturer to liability for the entire damage, but the manufacturer should be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design." [13]

Defendant finally argues that several public policy considerations dictate that no liability should flow from injuries caused by an automobile designed so that it is unreasonably dangerous. We disagree.

First, defendant raises the spectre of a deluge of litigation flooding both the courts and automobile manufacturers. It seems doubtful that a large number of additional actions would be commenced, although it does seem likely that automobile manufacturers will more frequently be joined as parties defendant. However, regardless of the amount of increased litigation that might arise it would be highly inequitable to create a special exception to the products liability doctrine for automobiles.

Second, defendant asserts that unsophisticated juries would not be able to properly evaluate the complex economic and engineering data that would be presented at trial. However, juries are always called upon to make decisions based upon complex facts in many different kinds of litigation. Skillful trial lawyers should be able to reduce complicated concepts to ideas readily understandable to lay juries. The problems presented in products liability jury trials would appear no more in-

[13] *Id.* at page 503.

surmountable than similar problems in other areas of the law.

Finally, defendant argues that the national character of the automobile industry dictates that automobile design not be subject to piecemeal regulation by different juries in different states. Defendant argues that the problem of designing safe cars is for the Congress, not state courts, and that federal safety regulations established by the National Highway Traffic Safety Administration, pursuant to the National Traffic and Motor Vehicle Safety Act of 1966,[14] pre-empt the field of automobile safety regulation thus rendering state courts powerless to act in this area. Defendant completely overlooks, however, 15 U. S. Code, sec. 1397 (c), which provides as follows:

*"Continuation of common law liability*
"(c) Compliance with any Federal motor vehicle safety standard issued under this subchapter does not exempt any person from any liability under common law."

Thus Congress felt that federal regulations should be supplementary to the common law of products liability. Defendant's argument that the problem of automobile design is exclusively legislative must therefore be rejected.

*By the Court.*—Order and judgment reversed; cause remanded for further proceedings not inconsistent with this opinion.

DAY, J., took no part.

[14] 15 U. S. Code, sec. 1381 *et seq.* (1970).