VINCER, by Guardian *ad litem,* and others, Appellants,
v. ESTHER WILLIAMS ALL-ALUMINUM SWIMMING
POOL COMPANY and others, Respondents.*

*No. 454. Argued May 7, 1975.—Decided June 30, 1975.*
(Also reported in 230 N. W. 2d 794.)

* Motion for rehearing denied, with costs, on September 30, 1975.

328

For the appellants there were briefs by *Habush, Gillick, Habush, Davis & Murphy,* attorneys, and *Howard A. Davis* and *Jean Seaburg* of counsel, all of Milwaukee, and oral argument by *Howard A. Davis.*

For the respondents Esther Williams All-Aluminum Swimming Pool Company and Insurance Company of North America there was a brief by *Borgelt, Powell, Peterson & Frauen,* attorneys, and *Thomas H. Knoll* of counsel, all of Milwaukee, and oral argument by *Mr. Knoll;* for the respondents Banner Builders, Inc., and Employers Mutual Casualty Company there was a joint brief by *Kasdorf, Henderson, Dall, Lewis & Swietlik* and *S. Raymond Spitz,* attorneys, and *Kenton E. Kilmer* and *S. Raymond Spitz* of counsel, all of Milwaukee, and oral argument by *Mr. Kilmer.*

CONNOR T. HANSEN, J. The sole issue on this appeal is whether the complaint states a cause of action against the Esther Williams All-Aluminum Swimming Pool Company and the Banner Builders, Inc., and their insurers. We conclude that it does not. Therefore, we affirm the trial court in its decision sustaining the demurrer.

In *Dippel v. Sciano,*[1] this court adopted sec. 402A of Restatement, 2 *Torts* 2d,[2] pertaining to strict liability in

---

[1] (1967), 37 Wis. 2d 443, 459, 155 N. W. 2d 55.

[2] This section provides:

"Special Liability of Seller of Product for Physical Harm to User or Consumer

tort. Under this section, where the plaintiff proves he was injured by a product "in a defective condition unreasonably dangerous to the user" and establishes the other requisite elements listed in the section, he is relieved of the burden of proving specific acts of negligence by the manufacturer who is then deemed negligent per se.[3] Where a plaintiff is unable to prove the elements necessary to recovery under a theory of strict liability, the manufacturer or seller may still be liable under a negligence theory where the plaintiff is able to prove specific negligent conduct. However, even under negligence law, the plaintiff still must prove that the product causing the injury was dangerous and defective.

Comment *g* to sec. 402A of Restatement, 2 *Torts* 2d, defines "defective condition" in part as follows:

*"g. Defective condition.* The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him."[4]

---

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." (pp. 347, 348)

[3] *Powers v. Hunt-Wesson Foods, Inc.* (1974), 64 Wis. 2d 532, 536, 219 N. W. 2d 393; *Dippel v. Sciano* (1967), 37 Wis. 2d 443, 460, 464, 155 N. W. 2d 55.

[4] Restatement, 2 *Torts* 2d, comment *g*, p. 351.

The particular defect in the design of the swimming pool, as alleged in the complaint, is the absence of a self-latching and closing gate to prevent entry to the pool. We are satisfied that the swimming pool is not defective in this respect because, as a matter of law, the swimming pool was as safe as it reasonably could be since it did contain a retractable ladder, which unfortunately was allegedly left down and led to the injury of the small child.

Even if a product is defective, it must be shown to be unreasonably dangerous to the user or consumer. Comment *i* to sec. 402A of the Restatement defines "unreasonably dangerous" in part as follows:

"*i. Unreasonably dangerous.* The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption. Ordinary sugar is a deadly poison to diabetics, and castor oil found use under Mussolini as an instrument of torture. That is not what is meant by 'unreasonably dangerous' in this Section. *The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.*" (Emphasis supplied.) [5]

This emphasized language has been cited with approval in the strict liability cases of *Netzel v. State Sand & Gravel Co.*[6] and *Arbet v. Gussarson.*[7]

In *Arbet* the court upheld as against a demurrer the complaint of two automobile accident burn victims alleging that their car was unreasonably dangerous and de-

[5] *Id.* comment *i*, p. 352.

[6] (1971), 51 Wis. 2d 1, 11, 186 N. W. 2d 258.

[7] (1975), 66 Wis. 2d 551, 557, 225 N. W. 2d 431.

fective because of a plastic gas line apparatus retaining gasoline in the passenger compartment. The court commented that the alleged defect in the car was a latent defect:

". . . It must be noted also that the design characteristics complained of in the instant case were hidden dangers, not apparent to the buyer of the car, and not the subject of a manufacturer's warning. This is a different case, therefore, than a case where a plaintiff sues the manufacturer of a Volkswagen and complains that the car was designed too small to be safe. Such a defect could hardly be said to be hidden. . . . since the ordinary consumer would expect a Volkswagen to be less safe in an accident than, say, a Cadillac, the smallness of the car with the attendant danger would not per se render it inherently dangerous. Rather it must contain a dangerous defect whose presence an ordinary consumer would not reasonably expect."[8]

Thus, the test in Wisconsin of whether a product contains an unreasonably dangerous defect depends upon the reasonable expectations of the ordinary consumer concerning the characteristics of this type of product. If the average consumer would reasonably anticipate the dangerous condition of the product and fully appreciate the attendant risk of injury, it would not be unreasonably dangerous and defective. This is an objective test and is not dependent upon the knowledge of the particular injured consumer, although his knowledge may be evidence of contributory negligence under the circumstances.[9] In *Schuh v. Fox River Tractor Co.*[10] for example, the court held that the positioning of the clutch

[8] *Id.* at page 557.

[9] *Dippel v. Sciano* (1967), 37 Wis. 2d 443, 460, 461, 155 N. W. 2d 55, held that contributory negligence is a defense and indicated that the unreasonable assumption of risk can be considered contributory negligence.

[10] (1974), 63 Wis. 2d 728, 218 N. W. 2d 279.

lever on a crop blower machine constituted an unreasonably dangerous defect because a potential user might be misled as to its function. However, the court held the particular injured plaintiff's contributory negligence greater than any negligence of the manufacturer because the plaintiff was an experienced operator of the machine and knew of the potential dangers, yet failed to exercise due care.

Based upon the principles discussed above, we conclude that the swimming pool described in plaintiffs' complaint does not contain an unreasonably dangerous defect. The lack of a self-latching gate certainly falls within the category of an obvious rather than a latent condition. Equally important, the average consumer would be completely aware of the risk of harm to small children due to this condition, when the retractable ladder is left in a down position and the children are left unsupervised. We conclude, therefore, that plaintiffs' second amended complaint fails to state a cause of action.

*By the Court.*—Judgment and order affirmed.

WILKIE, C. J. *(dissenting)*. The first problem I find in the majority opinion is that it holds that there was no defect here as a matter of law. I would hold that this was a factual determination to be tried out by the trier of fact. There is a question here for the trier to determine whether the swimming pool (which did not have a self-latching and closing gate) was unavoidably unsafe as, for example, knives, baseball bats, alcohol, small foreign cars, and, therefore, not defective. Then, too, it would be a question of fact whether rendering the product safe by incorporating other safety features would destroy the usefulness of the product, or would be far too costly. On this the defective swimming pool manufacturer would have the burden of proof.

The additional holding of the majority ruling out liability where the defect is obvious and apparent—as here

—is really based upon the concept of assumption of risk which *Dippel, supra,* held was not an absolute bar to recovery but rather a matter of contributory negligence. I would, therefore, drop the requirement that a product must be affirmatively shown to be unreasonably dangerous and I would regard the introduction of this element as a factor of contributory negligence to be compared with the negligence on the part of the manufacturer.

The requirement of showing "unreasonable danger" was dropped by the California Supreme Court in the 1972 companion cases of *Cronin v. J. B. E. Olson Corp.*[1] and *Luque v. McLean.*[2] In *Cronin* the court held that a plaintiff no longer need show that the product injuring him was unreasonably dangerous, but rather merely that it was defective. The court did not precisely define what the term "defective" standing alone is now to mean,[3] but it did explain its reasons for abandoning the "unreasonable danger" limitation:

"... Prosser, the reporter for the Restatement, suggests that the 'unreasonably dangerous' qualification was

[1] (1972), 8 Cal. 3d 121, 104 Cal. Rptr. 433, 501 Pac. 2d 1153.

[2] (1972), 8 Cal. 3d 136, 104 Cal. Rptr. 443, 501 Pac. 2d 1163.

[3] The court said in a footnote:

"We recognize, of course, the difficulties inherent in giving content to the defectiveness standard. However, as Justice TRAYNOR notes, 'there is now a cluster of useful precedents to supersede the confusing decisions based on indiscriminate invocation of sales and warranty law.' ..." 8 Cal. 3d at page 134, note 16.

*See: Jiminez v. Sears, Roebuck & Co.* (1971), 4 Cal. 3d 379, 383, 93 Cal. Rptr. 769, 482 Pac. 2d 681, where the court suggested two of the possible formulations: "... product ... which fails to match the quality of most like products ... : the lathe did not like other lathes have a proper fastening device, the brakes of the automobile went on unexpectedly, the drive shaft of a new car became disconnected;" "... unfit for its ordinary purpose ... a test based on merchantability, a contract principle." 4 Cal. 3d at pages 383, 384.

added to foreclose the possibility that the manufacturer of a product with inherent possibilities for harm (for example, butter, drugs, whiskey and automobiles) would become 'automatically responsible for all the harm that such things do in the world.' (Prosser, *Strict Liability to the Consumer in California,* 18 Hastings L. J. (1966), 9, 23.)

"The result of the limitation, however, has not been merely to prevent the seller from becoming an insurer of his products with respect to all harm generated by their use. Rather, it has burdened the injured plaintiff with proof of an element which rings of negligence. As a result, if, in the view of the trier of fact, the 'ordinary consumer' would have expected the defective condition of a product, the seller is not strictly liable regardless of the expectations of the injured plaintiff. If, for example, the 'ordinary consumer' would have contemplated that Shopsmiths posed a risk of loosening their grip and letting the wood strike the operator, another Greenman might be denied recovery. In fact, it has been observed that the Restatement formulation of strict liability in practice rarely leads to a different conclusion than would have been reached under laws of negligence. . . . Yet the very purpose of our pioneering efforts in this field was to relieve the plaintiff from problems of proof inherent in pursuing negligence . . . and warranty . . . remedies, and thereby 'to insure that the costs of injuries resulting from defective products are borne by the manufacturers . . . .' . . . .

". . . We think that a requirement that a plaintiff also prove that the defect made the product 'unreasonably dangerous' places upon him a significantly increased burden and represents a step backward in the area pioneered by this court.

"We recognize that the words 'unreasonably dangerous' may also serve the beneficial purpose of preventing the seller from being treated as the insurer of its products. However, we think that such protective end is attained by the necessity of proving that there was a defect in the manufacture or design of the product and that such defect was a proximate cause of the injuries. Although the seller should not be responsible for all injuries involving the use of its products, it should be liable for all

injuries proximately caused by any of its products which are adjudged 'defective.' "[4]

In *Luque* the court held that in strict liability cases the obviousness of the defect is not a bar to recovery, but that this factor could be an element of contributory negligence or unreasonable assumption of risk.

Thus, I would conclude that the obviousness of a defect is not a total bar to recovery, but merely a matter pertaining to contributory negligence.

There is an additional difficulty here that the small child is less than seven years of age and therefore incapable of negligence on his own. In swimming pools of this type, which are obviously intended for adult use, their use by children is anticipated but always under the immediate supervision of adults. In a products liability case, as here, I would therefore consider the negligence on the part of the parents for improper supervision as a matter of contributory negligence to be imputed to the child, and accordingly offset against the negligence of the manufacturer.

Further, the manufacturer here would still have the additional defense of showing that its negligence in producing a defective product was not causal.

But in any event, the complaint does state a cause of action and the demurrer should have been overruled and the defendants ordered to answer.

I am authorized to state that Mr. Justice HEFFERNAN joins in this dissent.

---

[4] 8 Cal. 3d at pages 132–134.