HELDT, Appellant, v. NICHOLSON MANUFACTURING
COMPANY, Respondent.*

*No. 513 (1974). Argued March 1, 1976.—
Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 154.)

* Motion for rehearing denied, with costs, on June 2, 1976.

For the appellant there was a brief and oral argument by *Larry W. Rader* of Wausau.

For the respondent there was a brief by *Glenn L. Sharratt* and *Fulton, Menn & Nehs, Ltd.,* of Appleton, and oral argument by *Mr. Sharratt.*

HEFFERNAN, J. The plaintiff, Walter R. Heldt, an employee of the Weyerhaeuser Company, was injured at work while cleaning out a debarking machine that had been manufactured by the defendant, Nicholson Manufacturing Company. Heldt's complaint was dismissed following the jury's determination that his negligence exceeded that of any of the defendants. We affirm.

The Nicholson debarker is a machine designed to remove the bark from logs. Logs are brought into the debarker by a conveyor belt; and as they approach the debarking mechanism, a hydraulically operated roller is activated by an electric eye. This roller holds the log in position as it is conveyed to and through the debarking knives. Beneath this mechanism is a moving belt designed to convey the bark chips away from the machine as they fall from the knives.

During certain seasons of the year, when the logs are sticky or filled with sap, the bark chips adhere to the mechanism and the bark buildup eventually prevents the proper operation of the debarking machine. This situation occurred while Heldt, a debarking operator, was at the controls of the machine. While attempting

to remove the bark chips by hand, the roller designed to hold the logs in place came down, and he sustained severe injuries.

The machine is designed for automatic, semiautomatic, or manual operation. Heldt testified that, prior to the time he attempted to free the machine of the bark buildup, he moved the lever controlling the hold-down roll to a position that would have raised the roll. He claimed that he checked the machine to make sure that it was not on automatic and that the electric eye was not operating. However, the coemployee who discovered Heldt trapped under the roller testified that the switch was in an automatic position and that he was obliged to move the switch to the up position in order to release Heldt. There was testimony that Heldt could have used a pike pole to jimmy the bark loose and that it was not necessary to manually free the bark buildup.

There was some expert testimony that the machine was defective, in that a hydraulic leak made it possible for the roller to come down even though the automatic mechanism had been properly deactivated. There was no mechanical method of preventing the hold-down roller from coming down, although, after the accident, a pin was inserted in the mechanism to hold the roller in an up position when the machine was not in operation.

Although the plaintiff's witnesses testified that the debarker was dangerously defective, engineers for the Nicholson Manufacturing Company testified that it conformed with proper industry safety standards.

There was evidence to show—and this is not contested on appeal—that the plaintiff was negligent in failing to use due precautions in cleaning out the bark residue.

There was substantial evidence to show that Weyerhaeuser, Heldt's employer, had failed to properly instruct the plaintiff in the proper procedures for cleaning the machine.

Only the Nicholson Manufacturing Company, Frank Grant, the general foreman at Weyerhaeuser, and Amos Stitham, the plant superintendent at Weyerhaeuser, were named defendants. The latter two were joined by Nicholson. However, in framing the special verdict, the trial judge, apparently *sua sponte*, submitted a question in respect to the negligence of Weyerhaeuser, which was not a party to the lawsuit.

The plaintiff specifically requested a question which inquired of the jury whether the Nicholson debarker was "in such defective condition as to be unreasonably dangerous to the debarker operator, Walter Heldt." The jury's verdict answered that question, "No." It found that Walter Heldt was causally negligent in respect to his own safety. His coemployees Stitham and Grant were found not negligent, and the Weyerhaeuser Company was found to be negligent. Forty-four percent of the negligence was apportioned to Heldt, and 56 percent to the Weyerhaeuser Company.

Inasmuch as Weyerhaeuser was the employer, its liability under the workmen's compensation act was the plaintiff's exclusive remedy; and as a matter of law, no recovery could be permitted in this action for Weyerhaeuser's common-law negligence. As a consequence, the plaintiff's complaint was dismissed.

Notice of appeal is taken from "the whole of the judgment dismissing the plaintiff's complaint against the defendant, Nicholson Manufacturing Company." On this appeal, the plaintiff also asks for a new trial, the motion for which had been denied prior to the entry of the judgment.

Initially, the plaintiff asks for a new trial because the requirement in a products-liability case that the product be "unreasonably dangerous" ought to be eliminated. As stated above, however, the plaintiff specifically requested the special verdict question that included the

element of "unreasonably dangerous." Moreover, the plaintiff did not object to the judge's instructions in that respect. In the motion for a new trial, the plaintiff made no mention of any objection to that verdict question or the consequent instructions. The plaintiff has no right to have the instructions which he requested reviewed on this appeal. *Savina v. Wisconsin Gas Co.* (1967), 36 Wis. 2d 694, 701, 154 N. W. 2d 237; *Hein v. Torgeson* (1973), 58 Wis. 2d 9, 17, 205 N. W. 2d 408.

While an appellant is not precluded for the first time on appeal from raising a question in respect to a jury instruction if it is evident that the judge committed an error of law, whether a legally correct but insufficient instruction can be so raised rests in the discretion of this court. In the instant case, the plaintiff's requested instruction and the instruction given by the court fully conformed with the standards pertaining to products liability heretofore adopted by this court.

In *Dippel v. Sciano* (1967), 37 Wis. 2d 443, 155 N. W. 2d 55, this court adopted portions of sec. 402A of Restatement, 2d, *Torts.* In *Dippel,* we said a plaintiff must prove that the product was in a defective condition when it left the possession of the seller and that it was unreasonably dangerous to the user or consumer. The court's instructions conformed to the standard of *Dippel.*

The *Dippel* standard was questioned in a dissenting opinion in *Vincer v. Esther Williams All-Aluminum Swimming Pool Co.* (1975), 69 Wis. 2d 326, 230 N. W. 2d 794. That dissent cited with approval two California cases (*Cronin v. J. B. E. Olson Corp.* (1972), 8 Cal. 3d 121, 104 Cal. Rptr. 433, 501 Pac. 2d 1153, and *Luque v. McLean* (1972), 8 Cal. 3d 136, 104 Cal. Rptr. 443, 501 Pac. 2d 1163) which eliminated the "unreasonably dangerous" requirement in proving a products-liability case. However, the major thrust of the dissenting opinion was directed to the majority's theory that an obviously dan-

gerous condition should not result in liability, because the consumer would be fully aware of the risk. The dissent took the position that the consumer or user's awareness of the risk was only a factor to be utilized in assessing contributory negligence and had nothing to do with the *prima facie* liability of the product manufacturer.

Irrespective, however, of the interpretation to be given to either the majority or dissent in *Vincer*, the "unreasonably dangerous" element remains an essential ingredient of an action brought pursuant to *Dippel* and its progeny. The trial judge correctly interpreted the law when he so instructed the jury.

While this court has not foreclosed itself from a reconsideration of this question, the issue was not raised in the trial court, and we decline to consider an issue raised for the first time on appeal. In *Terpstra v. Soiltest, Inc.* (1974), 63 Wis. 2d 585, 593, 218 N. W. 2d 129, relying upon *Cappon v. O'Day* (1917), 165 Wis. 486, 490, 162 N. W. 655, we said:

> " 'The reason for the rule is plain. If the question had been raised below, the situation might have been met by the opposite party by way of amendment or of additional proof.'
> "The adoption of a new rule of law on appeal when the question was not raised at trial might well work hardship on the adversary. It would also deprive this court of the informed thinking of the trial judge on the matter."

Suffice it to say that, on the basis of these correct instructions and on the basis of sufficient evidence, the jury found that the Nicholson Manufacturing Company had not manufactured a defective product and that it was not unreasonably dangerous to the plaintiff.

On this appeal, the plaintiff also argues that the trial judge erred when *sua sponte* he included in the special verdict a question in respect to the negligence of the employer, Weyerhaeuser. Weyerhaeuser had not been

joined as a defendant and could not be, for its only liability to the employee, Heldt, was for workmen's compensation. The record, however, is replete with evidence of Weyerhaeuser's negligence—principally because of its failure to instruct the plaintiff in proper safety procedures. In light of this evidence, it would have been error for the judge to have failed to include Weyerhaeuser in the negligence portion of the verdict.

The identical question was presented in *Connar v. West Shore Equipment of Milwaukee, Inc.* (1975), 68 Wis. 2d 42, 227 N. W. 2d 660. In that case we found it to be error to exclude from the special verdict a question relating to the negligence of the employer, even though it was not a party to the action and could not be made liable by reason of the exclusivity of the workmen's compensation remedy. We said, at page 45:

> "Only one question must be affirmatively answered by the trial judge before submitting a negligence question to the jury: Is there evidence of conduct which, if believed by the jury, would constitute negligence on the part of the person or other legal entity inquired about.
>
> "At the requested-special-verdict-stage of a lawsuit, it is immaterial that the entity is not a party . . . . As pointed out in *Pierringer v. Hoger* (1963), 21 Wis. 2d 182, 124 N. W. 2d 106, and *Payne v. Bilco Co.* (1972), 54 Wis. 2d 424, 195 N. W. 2d 641, the apportionment must include all whose negligence may have contributed to the arising of the cause of action.
>
> ". . .
>
> " '[S]uch percentage of negligence can only be determined by a proper allocation of all the causal negligence, if any, of all the joint tort-feasors and of the plaintiff if contributory negligence is involved.' "

While the plaintiff argues that the instructions were incomplete in respect to the negligence of Weyerhaeuser, they were not erroneous as a matter of law; and, as stated in *Savina, supra,* there can be no objection to the insufficiency or incompleteness of the instructions when no objection was made at trial. Where the instructions,

although incomplete, are not erroneous as a matter of law, they will not be considered for the first time on appeal. *Lemberger v. Koehring Co.* (1974), 63 Wis. 2d 210, 216 N. W. 2d 542. The plaintiff on this appeal, however, fails even to indicate in what way the instructions were incomplete or how they might have misled the jury. There is nothing for this court to review in respect to the instructions that were given in regard to Weyerhaeuser.

The plaintiff also argues that error was committed, or at least that the jury was prejudiced, because the question in respect to the plaintiff's negligence was read to the jury prior to instructing the jury on the liability of the product manufacturer. Inasmuch as the question in respect to products liability preceded the question in respect to Heldt's negligence, it is doubtful that the plaintiff's position is borne out completely by the record. Be that as it may, the plaintiff made no objection to the order or sequence of the instructions, nor did he object to the sequence of instructions after they were submitted to the jury. The question was not raised in the post-trial motion. Even had those objections been timely raised, it is not apparent to this court that the order of reading the instructions suggested an answer that would have influenced a verdict either for or against the plaintiff.

This court stated in *Swanson v. Maryland Casualty Co.* (1954), 266 Wis. 357, 363, 63 N. W. 2d 743, "We know of no rule which requires that the various portions of a charge be given in any prescribed order."

The order of submission to the jury does not *ipso facto* tend to prove prejudice for or against a party. If an objecting party is to prevail on this point, he must demonstrate that an objection was timely made and that prejudice was the likely result.

The trial judge instructed the jury in respect to the contributory negligence of Walter R. Heldt. He defined the duty of Heldt in that respect as being the obligation

to exercise ordinary care. That ordinary-care standard was explained at length. The plaintiff contends, for the first time on this appeal, that these instructions were erroneous; and he maintains that the special instruction, Wis J I—Civil 1051, should have been given. That instruction tells the jury that:

"Momentary diversion of attention or preoccupation of a workman in the performance of his work minimizes or reduces the degree of care that would otherwise be required of him; nevertheless, a workman has the duty to exercise the same degree of care for his own safety that an ordinarily prudent workman would exercise under such conditions (*when preoccupied with his work*) (*when his attention was momentarily diverted by his work*)."

While that instruction may be appropriate under some circumstances, there was no evidence that the plaintiff was so preoccupied with his work that he was unable to watch out for hazards.

It must be remembered that the jury failed to believe that the Nicholson machine was a defective and dangerous product. It should be remembered, also, that there was evidence that the plaintiff negligently failed to set the controls on the machine in such a position that would diminish the likelihood of his injury. There is no evidence that the plaintiff was preoccupied by other hazards beyond his control that would have merited an instruction exonerating him because of a necessary diversion of his attention. *See: Sampson v. Laskin* (1975), 66 Wis. 2d 318, 327, 224 N. W. 2d 594.

Moreover, the negligence of the plaintiff, Heldt, is immaterial, for no party who could have been liable was found negligent. Nicholson Manufacturing Company and the fellow employees were exonerated of liability under any theory. Weyerhaeuser, which was found negligent, was immunized from liability because of the exclusivity of the workmen's compensation remedy. Under these circumstances and under the evidence which supports those jury findings, the plaintiff's negligence is immaterial.

Nor do we have any reason to believe, on the basis of this record, that justice has miscarried and that a new trial is warranted for that reason. We said in *Benzschawel v. Stoll* (1974), 64 Wis. 2d 211, 215, 218 N. W. 2d 748, that a new trial ought not be granted unless this court is convinced "to a reasonable certitude that if there were a new trial it would probably effect a different result." There is no evidence of a possible miscarriage of justice, and we cannot say to a reasonable certitude that a new trial under optimum conditions would produce a different result.

*By the Court.*—Judgment affirmed.