COURT OF APPEALS
DECISION
DATED AND FILED

August 12, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2430-FT**

Cir. Ct. No. **2019SC1190**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

WILLIAM H. HEANEY,

  PLAINTIFF-APPELLANT,

V.

OSHKOSH BUSINESS CENTER III, LLC,

  DEFENDANT-RESPONDENT.

APPEAL from a judgment of the circuit court for Winnebago County: SCOTT C. WOLDT, Judge. *Affirmed.*

¶1 GUNDRUM, J.[1] William Heaney appeals from a judgment dismissing his small claims replevin action seeking the recovery of three oil

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

portraits hanging in the lobby of the "Oshkosh Northwestern Building," a building owned by Oshkosh Business Center III, LLC. He asserts the circuit court erred in refusing to admit as evidence at the trial authorizations signed by his cousin and his cousin's widow and erred in ultimately concluding he had not met his burden of proof to establish ownership of the portraits. For the following reasons, we affirm.

### *Background*

¶2      The relevant evidence presented at trial is as follows.

¶3      Heaney testified that on April 23, 1998, the Oshkosh Northwestern Company (Oshkosh Northwestern) sold most of its assets to Ogden Newspapers. As part of the asset purchase agreement, three oil portraits hanging in the lobby of the Oshkosh Northwestern Building were "[t]o be loaned to [Ogden Newspapers] under separate agreement." No such "separate agreement" was entered into.

¶4      Heaney further testified that at the time of the sale he owned fifty percent of the shares of Oshkosh Northwestern, and two of his cousins, Susan Honaker and Thomas Schwalm, each owned twenty-five percent. Neither Heaney's, Honaker's, nor Schwalm's names, however, are found in the asset purchase agreement. On May 29, 1998, Oshkosh Northwestern filed articles of dissolution with the Wisconsin Department of Financial Institutions.

¶5      After the sale to Ogden Newspapers, the Oshkosh Northwestern Building was sold twice, first to the owners of the Appleton Post Crescent and later to Gannett Satellite Information Network, LLC, prior to being sold to

Oshkosh Business Center.[2] Although Heaney was aware of these prior sales, he did not contact anyone regarding the portraits until May 2017, after the sale to Oshkosh Business Center.

¶6 After Heaney's presentation of his case, the circuit court dismissed the action upon Oshkosh Business Center's motion, concluding that Heaney had not met his burden of proof to show that he had been an owner of Oshkosh Northwestern and thus is an owner of the portraits. Heaney appeals.

### *Discussion*

¶7 Heaney contends the circuit court erred at trial when it (1) "refused to admit" into evidence authorizations from Honaker and Schwalm's widow, Joanne Schwalm, indicating that they, along with Heaney, were the owners of Oshkosh Northwestern and thus the portraits; and (2) granted Oshkosh's motion to dismiss after Heaney's case-in-chief. We begin with the second point.

¶8 We will not upset a circuit court's findings of fact unless they are clearly erroneous. WIS. STAT. § 805.17(2); *Farrell v. John Deere Co.*, 151 Wis. 2d 45, 62, 443 N.W.2d 50 (Ct. App. 1989). Additionally, when, as in the case now before us, the court serves as the factfinder, "it is the ultimate arbiter of the credibility of the witnesses and of the weight to be given to each witness's testimony." *Lessor v. Wangelin*, 221 Wis. 2d 659, 665, 586 N.W.2d 1 (Ct. App. 1998).

---

[2] Murray Wikol, who runs ProVisions, LLC, also testified at trial. His only relevant testimony was that while ProVisions, LLC, originally entered into the purchase and sale agreement for the Oshkosh Northwestern Building, the buyer of the property, as titled, was Oshkosh Business Center III, LLC.

¶9      The circuit court here ultimately found that Heaney had not met his burden to show ownership of the portraits, specifically finding that "this plaintiff has not proved that they are Oshkosh Northwestern Company or their assigned after their dissolutionment." Heaney faults the court for expressing that "there should be dissolution paperwork that showed assets were disbursed." The court acknowledged that Heaney testified to the existence of such paperwork, but Heaney faults the court for its concern that there was no "paperwork" showing Heaney was an owner. Heaney claims that his testimony as to ownership, which he further claims was "bolster[ed]" by the authorizations that the court did not admit into evidence, was not refuted at trial by any other evidence. He therefore insists the court erred by not accepting his testimony, and the authorizations, as sufficient proof of his ownership.

¶10     We disagree with Heaney. To begin, as the circuit court noted, Heaney bore the burden of proof. If Heaney presented insufficient proof on the question of ownership, he did not meet his burden, and his claim of error by the court fails.

¶11     Here, the trial was to the circuit court; therefore, the court sat as factfinder. It observed Heaney's testimony and found it unpersuasive as to ownership. While the court did not specify whether it was not convinced by Heaney's testimony because it believed Heaney was being intentionally untruthful, was perhaps remembering facts incorrectly, or for some other reason, in order to prevail, Heaney needed to convince the court he was the lawful owner, and he failed in this regard.

¶12     During his direct examination, Heaney referred to various documents admitted into evidence, however, none of them provided direct support

of his claim that he had been an owner of Oshkosh Northwestern and thus is an owner of the portraits. When asked on cross-examination if he had "stock certificates or anything to show" that he was "a shareholder of Oshkosh Northwestern," Heaney claimed such documentation existed "[i]n the files," but that he did not have such with him. While Heaney claimed he "loaned" the paintings to Ogden "for an indefinite amount of time," he admitted he had no documentation showing such a "loan" either. Heaney first testified that he did not "personally execute the Asset Purchase Agreement with Ogden" in 1998; he then testified that he did "sign[] it"; and then when shown that document on the witness stand, he acknowledged that the signature on the document was not his but that of "the acting publisher, Michael Phelps."[3]

¶13 Heaney indicated on direct examination that he had "a curator examine [the paintings] with an eye towards actually removing them for [him]"; yet, when asked on cross-examination for the curator's name, he responded that he "misplaced that information." When asked if he had a report from the curator, he responded that he "had a verbal report at the time."

¶14 When asked on redirect as to whether there were any stock certificates showing his ownership of Oshkosh Northwestern, Heaney testified that "[t]hey're buried somewhere in family papers," but subsequently expressed that it was "possible that those certificates were actually surrendered" as part of the process of dissolving Oshkosh Northwestern.

---

[3] On redirect, Heaney testified, without documentary support, that he and the other shareholders had authorized Phelps to sign the asset purchase agreement.

¶15    Upon objection by Oshkosh Business Center, the circuit court declined to "accept," on hearsay grounds, Heaney's offered exhibits nine and ten, which were respectively labeled "Authorization & Assignment" and "Authorization." Heaney had testified that these documents were respectively signed by Honaker and Honaker and Joanne, whom Heaney testified were each twenty-five percent owners of Oshkosh Northwestern. These authorizations, signed in February 2019, indicate that at the time of the April 23, 1998 sale of Oshkosh Northwestern, Heaney owned fifty percent of the company and Honaker and Schwalm each owned twenty-five percent, but that Schwalm had since died and was survived by his widow, Joanne. The documents state that Honaker and Joanne authorize Heaney to recover the portraits.

¶16    Following Heaney's presentation of evidence, Oshkosh Business Center moved for judgment as a matter of law, primarily on the basis that Heaney failed to meet his burden of proof to show that he was an owner of the portraits. The court expressed that there was "nothing" but Heaney's testimony "that tells me he has any title whatsoever or interest in Oshkosh Northwestern[]. There's nothing." The court continued: "I agree that, according to Exhibit 2 [the April 23, 1998 Asset Purchase Agreement] the Oshkosh Northwestern Company … retained ownership of these three paintings from The Ogden Company in the sale." The court further stated:

> Then the issue comes down to whether or not there is retention of that ownership right…. One is you need to show that [Heaney] is Oshkosh Northwestern Company, and I do understand that it's been dissolved, but there should be dissolution paperwork that showed assets were disbursed between three individuals, … 50 percent to this individual and 25 and 25 to the other two, none of which we have. I agree it's testified to, but we don't have that showing that ownership…. I don't find that … the plaintiff has met their burden of proof to show ownership of these documents. I agree, once again, the Oshkosh Northwestern

6

Company would have ownership according to that agreement, but this person—this plaintiff has not proved that they are Oshkosh Northwestern Company or their assigned after their dissolutionment.

¶17 Heaney asserts the circuit court erred in declining to "accept" the authorizations by his relatives. He claims this is so because WIS. STAT. § 799.209(2), related to small claims court actions, provides that in a small claims court action, "[t]he court … shall admit all other evidence having reasonable probative value, but may exclude irrelevant or repetitious evidence or arguments." As noted, the court did preclude admission of the authorizations, exhibits 9 and 10, on the basis that they were hearsay.

¶18 We need not decide whether the circuit court erred in declining to "accept" the authorizations themselves, because even if the court did err, the error was harmless. This is so because Heaney testified, without objection, to the substance of those documents. He agreed on direct examination that Exhibit 9 was a notarized "authorization and assignment that was signed by Susan Schwalm Honaker with respect to these paintings" and in it "she authorizes [Heaney] and assigns to [Heaney] her current percentage so that [he] can recover these." Heaney further agreed that Exhibit 10 was an unnotarized "authorization from both Susan and from Joanne Schwalm" that "authorized [Heaney] to recover these on behalf of Joanne and Susan." He further testified that he recognized both Susan's and Joanne's signatures, he "didn't create Exhibit 9 and 10 ... and falsify their signatures," and "as far as [he was] concerned, [he felt he was] the authorized representative of [his] family to recover these paintings." Accepting the actual paper documents into evidence, saying largely the same thing that Heaney testified to while looking at the papers, would have added little, if anything.

¶19    Even though the court did not admit the exhibits, it seems clear it considered their substance, as testified to by Heaney, that Heaney, Honaker, and Joanne claimed to be the three partial owners of the portraits. In its ruling, the court noted "there should be dissolution paperwork that showed assets were disbursed between three individuals, … 50 percent to this individual and 25 and 25 to the other two, none of which we have." The court added that: "I don't find that … the plaintiff has met *their* burden of proof to show ownership of these documents…. [T]his plaintiff has not proved that *they* are Oshkosh Northwestern Company or their assigned after their dissolutionment." (Emphasis added.) Thus, the court appeared to accept that the rejected exhibits were signed by Honaker and Joanne who claimed, along with Heaney, to be partial owners of the portraits. Even considering their support for Heaney's position, the court was nonetheless unconvinced that Heaney had established ownership.

¶20    While Heaney appears to believe he should have prevailed because Oshkosh Business Center did not present testimony or other evidence to counter his self-serving testimony that he was the owner of the portraits, he identifies no law holding that the factfinder, here the circuit court, must accept a witness's testimony as true and correct simply because no other witness contradicts it, even if the factfinder finds the testimony to be unconvincing. Heaney bore the burden to establish ownership, and the court found his testimony unconvincing and concluded he had not met his burden. As Heaney seemed confused, uncertain, and inconsistent during various portions of his testimony and presented ample excuses but no documentation from the April 1998 sale showing he was an owner of Oshkosh Northwestern and thus the portraits, it was not unreasonable for the court to find that Heaney had not met his burden to establish ownership. In short, the

court did not clearly err in declining to embrace Heaney's self-serving testimony that he was an owner.[4]

> *By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[4] Heaney raises additional issues in his appeal; however, because our holding that the circuit court did not clearly err in finding that Heaney failed to establish ownership is dispositive, we do not address those other issues. *See **State v. Davis***, 2011 WI App 147, ¶15, 337 Wis. 2d 688, 808 N.W.2d 130 (We "need not address other issues when one is dispositive.").